UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.: 1:19-cv-23678-GAYLES/OTAZO-REYES

ANYA WEATHERLY,

    Plaintiff,

v.

ABC LEGAL, INC.,

    Defendant.

_____/

**ORDER**

**THIS CAUSE** comes before the Court upon Defendant's, ABC Legal Services, LLC, f/k/a ABC Legal Services Inc. ("ABC Legal"), Motion to Dismiss Second Amended Complaint (the "Motion") [ECF No. 54]. The Court has reviewed the Motion and the record and is otherwise fully advised. For the following reasons, the Motion is granted in part.

**I.    BACKGROUND[1]**

Plaintiff, Anya Weatherly, is Caucasian and white; she is Russian by birth and national origin. [ECF No. 49 ¶ 8]. She worked for Defendant in its Dania, Florida, office from approximately August 22, 2017, to November 2, 2017. *Id.* ¶¶ 9,14. Defendant is in the business of providing certified process servers to serve legal documents. *Id.* ¶ 14. Plaintiff was employed as a "compliance specialist." *Id.* ¶ 19. Plaintiff's responsibilities included "handling the mail, scanning documents and bar codes into a computer, sorting the documents by case number and checking legal documents such as complaints, summonses and subpoenas using the company's internal

---

[1] As the Court is proceeding on a Motion to Dismiss, it takes Plaintiff's allegations in the Second Amended Complaint as true. *See Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997).

software." *Id.* Plaintiff met all stated requirements and satisfactorily performed the responsibilities of her position throughout her employment. *Id.* ¶ 15.

While working for Defendant, Plaintiff was subjected to discrimination by her immediate supervisor, Carlos Melo, a Hispanic male, and her co-worker, Kanya Robertson, an African American female. *Id.* ¶ 16. Mr. Melo, Ms. Robertson, and Plaintiff were the only employees that worked in the office full-time. *Id.* ¶ 18. Plaintiff's workspace was adjacent to Ms. Robertson's and separated only by a divider. *Id.* ¶ 17. The process servers only came into the office when necessary to pick up legal documents and to drop off paperwork after they served the document. *Id.* ¶ 18.

Ms. Robertson was a "dispatcher," responsible for printing the scanned documents and providing them to the process servers for service. *Id.* ¶ 20. Ms. Robertson was also responsible for assigning work to the process servers. *Id.* ¶ 37. Plaintiff and Ms. Robertson worked closely together daily, and both interacted with the process servers. *Id.* ¶ 20. Both Plaintiff and Ms. Robertson reported to Mr. Melo. *Id.* Plaintiff and Ms. Robertson were hourly paid and neither of them had managerial responsibilities. *Id.* ¶ 36. Plaintiff and Ms. Robertson were at least equally qualified for the respective positions they held; Plaintiff has a graduate degree while Ms. Robertson does not. *Id.* ¶ 35.

Plaintiff alleges that Mr. Melo and Ms. Robertson "constantly and loudly communicated by yelling to each other across the office" and "often made loud, insulting and vulgar remarks about various people, including employees and managers in the Defendant's Seattle headquarters." *Id.* ¶ 21. In particular, Mr. Melo and Ms. Robertson made vulgar remarks about a manager in the Seattle headquarters, Nadya, who Plaintiff believes is of the same race and national origin as she. *Id.* ¶¶ 22, 26. Mr. Melo and Ms. Robertson described Nadya as "stupid" and "bitchy"; they also claimed that Nadya was not entitled to her position or deserving of her job and that she must be

2

having an affair with the company's director. *Id.* ¶ 25. Mr. Melo and Ms. Robertson told Plaintiff that all Russian people are "prostitutes." *Id.* ¶ 26. Mr. Melo and Ms. Robertson frequently and loudly discussed their dislike of "white people" in general, often saying that white people were keeping them in "financial slavery" and pretended to be smarter than them. *Id.* ¶ 27. They often used the term "gringos" to describe white people. *Id.* Mr. Melo's and Ms. Robertson's conduct toward Plaintiff was physically threatening and humiliating, and unreasonably interfered with Plaintiff's work performance. *Id.* ¶¶ 83, 109.

Mr. Melo also treated Ms. Robertson more favorably than Plaintiff, although Plaintiff and Ms. Robertson were subject to the same rules regarding their attendance, conduct, and employee benefits. *Id.* ¶¶ 29, 30. Specifically, Ms. Robertson was able to use all of her paid time off each month while Plaintiff's requests for time off where repeatedly denied. *Id.* ¶ 32. Additionally, Plaintiff and Ms. Robertson were each allowed a specified time out of the office for lunch. *Id.* ¶ 30. Whenever Ms. Robertson overstayed her lunch time, Mr. Melo would "fix" Ms. Robertson's time records to show she as at work when in fact she was out of the office. *Id.* ¶ 33. Moreover, Ms. Robertson was often seen with Mr. Melo in his office. *Id.* ¶ 30.

At one point, Ms. Robertson told Plaintiff that she retaliated against one of Defendant's former employees who had been "up her nose" and that she took job leads away from that employee until the employee was forced to quit. *Id.* ¶ 37. Ms. Robertson also disparaged and discriminated against two white male process servers, Jason Jones and Leonard Gartman, telling Plaintiff that Mr. Jones and Mr. Gartman did not deserve to receive work. *Id.* ¶ 38. Ms. Robertson also told Plaintiff that she hated Mr. Gartman and that he annoyed her. *Id.* When a young, African American female was hired to work as a process server, Ms. Robertson treated her more favorably by giving her leads that belonged to Mr. Jones and Mr. Gartman while telling Mr. Jones and Mr.

Gartman that they should start looking for other jobs because the company had no work for them. *Id.* ¶ 39.

In or around September or October 2017, Plaintiff told Nadya that Mr. Jones and Mr. Gartman were being terminated because of Ms. Robertson's discrimination. *Id.* ¶ 40. At Nadya's suggestion, Plaintiff reported this discrimination to a Human Resources ("HR") representative in the Seattle office. *Id.* Shortly thereafter, Ms. Robertson's role assigning work to process servers was transferred to the Seattle office. *Id.* ¶ 41. Mr. Melo and Ms. Robertson were furious about the transfer decision, and they became "openly hostile" towards Plaintiff. *Id.* ¶ 43. Mr. Melo said to Ms. Robertson in Plaintiff's presence that there must be a "snitch" in the office. *Id.* ¶¶ 43, 44.

Soon thereafter, Plaintiff found dog feces smeared on the front bumper of her car while parked "in the supposedly secure parking garage." *Id.* ¶ 45. On another occasion, Plaintiff's tires were slashed while her car was parked there. *Id.* Plaintiff reported the incident to HR, but nothing was done about it to her knowledge. *Id.* After her complaints to HR, hostility towards Plaintiff intensified. *Id.* ¶ 46. Mr. Melo and Ms. Robertson began whispering instead of yelling across the office. *Id.* Also, Mr. Melo began diminishing Plaintiff's work responsibilities by assigning her tasks that were not a part of her job duties. *Id.* For example, Mr. Melo assigned Plaintiff to scan thousands of documents that were more than five years old and were scheduled to be discarded. *Id.* These tasks strained Plaintiff's eyes and caused her vision to decline because she was required to verify each scanned document on the computer screen and to process thousands of additional pages every day during her last two weeks in the office. *Id.* ¶ 47.

In October 2017, Plaintiff experienced health issues aggravated by the stress and trauma she endured daily at work. *Id.* ¶ 48. Plaintiff asked Mr. Melo several times for time off to see a doctor, but he refused despite allowing Ms. Robertson to take personal leave. *Id.* Plaintiff contacted

4

an HR representative, Betty Mirkovich, to determine whether she was eligible to take medical or sick leave. *Id.* ¶ 50. Ms. Mirkovich told Plaintiff her job would be safe if she took a medical leave of absence, but that Plaintiff would not be paid for that leave. *Id.* On or about November 1, 2017, Plaintiff sent an email to Mr. Melo, with the subject "medical leave," describing her health conditions and stating that she needed a break from work for a scheduled surgery. *Id.* ¶ 51. Plaintiff copied Ms. Mirkovich on the email. *Id.* Mr. Melo did not respond to the email. *Id.* The next day, Melo falsely informed Ms. Mirkovich that Plaintiff "quit yesterday." *Id*. Based on this representation alone, the company terminated Plaintiff's employment without notice. *Id.* ¶ 52. Plaintiff did not become aware of her termination until her healthcare provider told her that her insurance coverage was declined and had been cancelled. *Id.* ¶ 54.

Plaintiff filed her initial complaint on September 4, 2019. [ECF No. 1]. She later filed an Amended Complaint on May 4, 2020, [ECF No. 26], which was dismissed for failure to state a claim, [ECF No. 45]. On December 28, 2020, Plaintiff filed her Second Amended Complaint alleging discrimination based on race and national origin under Title VII of the U.S. Civil Rights Act ("Title VII") (Counts I and II) and the Florida Civil Rights Act ("FCRA") (Counts V and VI), hostile work environment under Title VII (Count IV) and the FCRA (Count VIII), and retaliation for protected activity under Title VII (Count III) and the FRCA (Count VII). [ECF No. 49]. On January 18, 2021, Defendant moved to dismiss for failure to state a claim, or in the alternative, for a more definite statement. [ECF No. 54].

II.   **LEGAL STANDARD**

To survive a motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6), a claim "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp.*

*v. Twombly*, 550 U.S. 544, 570 (2007)). This means the complaint must contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The pleadings are construed broadly, *Levine v. World Fin. Network Nat'l Bank*, 437 F.3d 1118, 1120 (11th Cir. 2006), and the allegations in the complaint are viewed in the light most favorable to the plaintiff, *Hawthorne v. Mac Adjustment, Inc.*, 140 F.3d 1367, 1370 (11th Cir. 1998). On a motion to dismiss, the court need not determine whether the plaintiff "will ultimately prevail . . . but whether his complaint [is] sufficient to cross the federal court's threshold." *Skinner v. Switzer,* 562 U.S. 521, 530 (2011).

### III.   DISCUSSION

Plaintiff asserts eight claims under Title VII and FCRA. Florida courts apply the same standards of proof and analytical framework to Title VII and FCRA claims. *Harper v. Blockbuster Entm't Corp.*, 139 F.3d 1385, 1387 (11th Cir. 1998). Accordingly, the Court examines Plaintiff's Title VII and FCRA claims together where appropriate. Applying these standards to the allegations in the Second Amended Complaint, the Court finds that Counts IV and VIII must be dismissed.

#### A.   *Race and National Origin Discrimination under Title VII and FCRA*

To sufficiently state a claim for discrimination based on race or national origin, Plaintiff must allege: (1) she was a member of a protected class; (2) she was qualified for the job; (3) she suffered an adverse employment action; and (4) she was "treated less favorably than a similarly-situated individual outside [her] protected class." *Maynard v. Bd. of Regents of Div. of Universities of Fla. Dep't of Educ. ex rel. Univ. of S. Fla.*, 342 F.3d 1281, 1289 (11th Cir. 2003) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).

For these claims, Defendant does not dispute that Plaintiff was a member of a protected class, that she was qualified for the job, and that she suffered an adverse employment action.

Rather, Defendant argues that Plaintiff has failed to show Ms. Robertson was a valid comparator to satisfy the fourth prong. When a plaintiff seeks to compare her treatment to someone outside of her protected class, the Eleventh Circuit requires that the plaintiff demonstrate that she and her proffered comparators were "similarly situated in all material respects." *Lewis v. City of Union City, Georgia*, 918 F.3d 1213, 1226 (11th Cir. 2019). That is, a "plaintiff must show that the comparator is similarly situated in terms of conduct, performance, and qualifications, and that no differentiating or mitigating circumstances distinguish their situation." *Dawson v. Miami-Dade Cty.*, No. 07-cv-20126, 2008 WL 1924266, at *9 (S.D. Fla. Mar. 11, 2008). A valid comparison turns "not on formal labels, but rather on substantive likeness." *Oirya v. Auburn Univ.*, 831 F. App'x 462, 464 (11th Cir. 2020) (citing *Lewis*, 918 F.3d at 1228). Minor differences in job function will not disqualify a would-be comparator. *Lewis*, 918 F.3d at 1227.

Here, Plaintiff proffers enough facts to suggest she and Ms. Robertson are similar in material respects. Both Plaintiff and Ms. Robertson were hourly employees who reported to Mr. Melo and were subject to the same rules and procedures. Their work responsibilities involved interacting with process servers, and neither had a managerial role. The Court finds these allegations sufficient to withstand dismissal at this stage. Therefore, Defendant's Motion to Dismiss Counts I, II, V, and VI is denied.

### B. Unlawful Retaliation for Protected Activity

To support a claim for retaliation under Title VII and the FCRA, a plaintiff must plausibly allege that (1) she engaged in statutorily protected activity; (2) she suffered a materially adverse employment action; and (3) there was a causal connection between the protected activity and the adverse employment action. *Goldsmith v. Bagby Elevator Co.*, 513 F.3d 1261, 1277 (11th Cir. 2008). Plaintiff alleges that after she told HR about Ms. Robertson's discrimination toward other

7

employees, she suffered an adverse employment action because Mr. Melo diminished her work responsibilities and Plaintiff was later terminated.

To establish an adverse employment action, "an employee must show a serious and material change in the terms, conditions, or privileges of employment." *Webb v. Int'l Bus. Machines Corp.*, 458 F. App'x 871, 875 (11th Cir. 2012). "[T]he employee's subjective view of the significance and adversity of the employer's action is not controlling; the employment action must be materially adverse as viewed by a reasonable person in the circumstances." *Pumpido v. Sch. Bd. of Miami-Dade Cty., FL.*, No. 02-cv-22548, 2003 WL 23312750, at *7 (S.D. Fla. Nov. 6, 2003); *see also Hinson v. Clinch Cty., Georgia Bd. of Educ.*, 231 F.3d 821, 829 (11th Cir. 2000).

Plaintiff first asserts that Mr. Melo diminished her responsibilities when he assigned Plaintiff to scan thousands of documents. But one of Plaintiff's main responsibilities as a compliance specialist was to scan documents. [ECF No. 49 ¶ 19]. Accepting Plaintiff's allegations as true, these "diminished" responsibilities do not indicate a change to Plaintiff's compensation, terms, conditions or privileges of employment. Plaintiff also points to instances where her car was vandalized to support her claim for retaliation. However, Plaintiff does not affirmatively plead that Mr. Melo, Ms. Robertson, or any other employee for Defendant was responsible for these actions.

However, there is no dispute that (1) telling HR about Ms. Robertson's discrimination against other employees was a protected activity or (2) Plaintiff's termination constitutes an adverse employment action. *See Jefferson v. Sewon Am., Inc.*, 891 F.3d 911, 924 (11th Cir. 2018) ("An employee's complaint about discrimination constitutes protected activity if the employee could reasonably form a good faith belief that the alleged discrimination existed. Termination is a materially adverse action.") (quotations and citations omitted). But, for Plaintiff's claim of retaliation to survive dismissal, Plaintiff must allege a causal connection between the protected

activity and the adverse employment action. To establish a causal connection, "a plaintiff merely has to prove that the protected activity and the [adverse] employment action are not completely unrelated." *Goldsmith*, 513 F.3d at 1278. The protected activity and adverse employment action are not completely unrelated when the employer knows of the protected activity at the time of the negative employment action. *Id.* Causation may also be inferred by showing close temporal proximity between the protected activity and the adverse employment action. *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007) (citing *Brungart v. BellSouth Telecomm., Inc.*, 231 F.3d 791, 798–99 (11th Cir.2000)).

Plaintiff engaged in protected activity by reporting Ms. Robertson's discriminatory actions to HR in or around September or October 2017, and Plaintiff was terminated on November 2, 2017. The temporal proximity between the time Plaintiff reported Ms. Robertson and Plaintiff's termination is enough for the Court to infer a causal connection between Plaintiff's protected activity and adverse employment action. Thus, the Court finds this allegation sufficient to pass muster at this stage of the litigation. As such, Defendant's Motion to Dismiss Counts III and VII is denied.

### C. *Hostile Work Environment*

To establish a claim of a hostile work environment, an employee must allege that: "(1) [s]he belongs to a protected group; (2) [s]he was subjected to unwelcome harassment; (3) the harassment was based on h[er] membership in the protected group; (4) it was severe or pervasive enough to alter the terms and conditions of employment and create a hostile or abusive working environment; and (5) the employer is responsible for that environment under a theory of either vicarious or direct liability." *Nurse v. City of Alpharetta*, 775 F. App'x 603, 607 (11th Cir. 2019). The employee must prove that "the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of [the

9

employee's] employment and create an abusive working environment." *Id.* The Eleventh Circuit considers four factors in determining whether workplace conduct objectively alters an employee's terms or conditions of employment: (1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's job performance. *Allen v. Tyson Foods*, 121 F.3d 642, 647 (11th Cir.1997).

The "mere utterance of an epithet which engenders offensive feelings in a[n] employee, does not sufficiently affect the conditions of employment to implicate Title VII." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (internal citation omitted). Courts have often required offensive language and epithets such as those allegedly used by Mr. Melo and Ms. Robertson to be accompanied by one of the *Allen* factors to support a claim for hostile work environment. *See Sutherland v. Boehringer-Ingelheim Pharms., Inc.*, 700 F. App'x 955, 961 (11th Cir. 2017) (finding that the record did not support a claim for hostile work environment because there were no allegations or evidence of how many times the inappropriate comments were made, whether Plaintiff was physically threatened or publicly humiliated, or that she was unable to perform her job responsibilities).

Here, Plaintiff fails to sufficiently connect the alleged discriminatory conduct to any of the *Allen* factors. Plaintiff only offers conclusory allegations as to the frequency and severity of the conduct (referring to the conduct as "constant" and "severe") and whether the conduct was physically threatening or humiliating or interfered with Plaintiff's job performance. *See* [ECF No. 49 ¶¶ 21, 27, 83, 109]. As such, Plaintiff has not sufficiently alleged a claim for hostile work environment. *See Gerbier v. J.R. Eight, Inc.*, No. 11-21040-JLK, 2011 WL 13268707, at *3 (S.D. Fla. Aug. 12, 2011) (dismissing a hostile work environment claim where the Complaint said

"nothing about the frequency or severity of the allegedly discriminatory conduct, whether the conduct was threatening, or whether it interfered with Plaintiff's work performance" [and] "[t]he remaining allegations . . . are simply conclusory statements.") (internal quotations omitted). Accordingly, Counts IV and VIII must be dismissed.

### IV. CONCLUSION

Based on the foregoing, it is **ORDERED AND ADJUDGED** that:

1. Defendant's Motion to Dismiss Second Amended Complaint, [ECF No. 54], is **GRANTED in part**;

2. The Motion is GRANTED as to Counts IV and VIII, and those counts are **DISMISSED with prejudice**; and

3. The Motion is DENIED as to Counts I, II, III, V, VI, and VII, and those counts shall proceed.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 22nd day of July, 2021.

_____
DARRIN P. GAYLES
UNITED STATES DISTRICT JUDGE